**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| ) | |
| LOUISA VIEIRA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:25-cv-12943-JEK |
| ) | |
| FRANK BISIGNANO, COMMISSIONER, ) | |
| SOCIAL SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION**
**TO AFFIRM THE COMMISSIONER'S DECISION**

**KOBICK, J.**

Plaintiff Louisa Vieira brings this action under the Social Security Act, 42 U.S.C. § 405(g), to challenge the final decision of the Commissioner of the Social Security Administration denying her application for Social Security Disability Insurance ("SSDI") benefits. Vieira contends that the Administrative Law Judge ("ALJ") erred by giving less weight to the opinion of her treating physician, Dr. Mark Fisher, than the opinions of the two state-agency medical consultants, Dr. Richard Goulding and Dr. Elaine Hom, who did not personally examine her. Pending before the Court is the Commissioner's motion to affirm the ALJ's decision. That motion will be granted because the ALJ properly explained how she considered the supportability and consistency of Dr. Fisher's opinion when finding his opinion unpersuasive in light of the objective medical evidence and the consultants' opinions.

**BACKGROUND**

I.   <u>**Statutory and Regulatory Framework.**</u>

The Social Security Administration administers the SSDI program by providing disability insurance to covered workers. *See Seavey v. Barnhart*, 276 F.3d 1, 5 (1st Cir. 2001) (citing 42 U.S.C. §§ 423, 1381a). Under the Social Security Act, a claimant seeking disability benefits must prove that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). That impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). To determine whether a claimant is so impaired, the "ALJ employs a five-step test." *Sacilowski v. Saul*, 959 F.3d 431, 433 (1st Cir. 2020). That test proceeds as follows:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

*Seavey*, 276 F.3d at 5 (citing 20 C.F.R. § 416.920).

A claimant's residual functional capacity ("RFC") measures "the most [he] can still do despite [his physical or mental] limitations." 20 C.F.R. § 404.1545(a)(1); *see Bowen v. City of New York*, 476 U.S. 467, 471 (1986) (RFC "measures the claimant's capacity to engage in basic work activities"). The RFC assessment is used to determine whether a claimant can perform "past

2

relevant work," which is work that the claimant has "done within the past five years that was substantial gainful activity and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1)(i). A claimant who has the RFC to perform his past relevant work is not disabled under the Social Security Act. *Id.* § 404.1560(b)(3). When assessing a claimant's RFC to perform the requirements of past relevant work at step four, the ALJ must "consider all of [the claimant's] medically determinable impairments," including those "that are not 'severe.'" *Id.* § 404.1545(a)(2); *see id.* § 404.1520(f).

The ALJ must also articulate how persuasive she finds "all of the medical opinions and all of the prior administrative medical findings" in a claimant's case record. *Id.* § 404.1520c(b). When making this determination, the ALJ must consider four primary factors: consistency, supportability, the source's relationship with the claimant, and specialization. *Id.* §§ 404.1520c(c)(1)-(4); *see also id.* § 404.1520c(c)(5) (listing other factors the ALJ may consider, such as "evidence showing a medical source has familiarity with the other evidence in the claim"). Supportability and consistency "are the most important factors," and the ALJ must "explain how [she] considered" those factors "for a medical source's medical opinions . . . in [a claimant's] determination or decision." *Id.* § 404.1520c(b)(2). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinio[n]," the more persuasive that opinion will be. *Id.* § 404.1520c(c)(1) (supportability factor). Likewise, "[t]he more consistent a medical opinio[n] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive" that opinion will be. *Id.* § 404.1520c(c)(2) (consistency factor). The ALJ may not, however, "defer or give any specific evidentiary weight, including controlling weight, to any medical opinio[n]," including that of a claimant's treating medical provider. *Id.* § 404.1520c(a).

3

II.    **Factual and Procedural Background.**

Louisa Vieira is a high school graduate who has not worked since the onset of the COVID-19 pandemic in 2019. ECF 6, at 7, 322-23. She previously worked as an assembler at a factory, a retail sales associate, and a short-order cook. *Id.* at 18, 26, 158, 165. Vieira's documented history of joint and back pain began in December 2020, when she sought treatment from Dr. Bianca Thorpe. *Id.* at 267. She was then referred to Dr. Mark Fisher, a rheumatologist, because of her pain. *Id.* at 268. In December 2020, after examining Vieira, Dr. Fisher diagnosed her with osteoarthritis. *Id.* at 262-66. Dr. Fisher diagnosed Vieira with polyarthritis in March 2021. *Id.* at 260-61. When Vieira returned for a follow-up appointment in June 2021, Dr. Fisher found positive tender points and diagnosed Vieira with fibromyalgia. *Id.* at 253-54. Such tender or trigger points are accepted by the American College of Rheumatology as an objective sign of fibromyalgia, a "'syndrome of chronic pain of musculoskeletal origin but uncertain cause.'" *Johnson v. Astrue*, 597 F.3d 409, 410, 412 (1st Cir. 2009) (per curiam) (quoting *Stedman's Med. Dictionary*, at 671 (27th ed. 2000)).

In October 2021, Dr. Fisher opined that, in light of her diagnoses, Vieira could reasonably be expected to sit in a chair for 2-3 hours, and to stand and walk for 2 hours, of an 8-hour workday. ECF 6, at 223. He further opined that she would be able to productively use her hands during only 2 hours of a typical workday, and that her ability to carry weight was limited. *Id.* at 224-25. Throughout 2022, Vieira continued to seek treatment from Dr. Fisher and other doctors, and she was subsequently diagnosed with mild duodenitis, gastritis, anxiety, and depression. *Id.* at 229, 311, 322-25. Vieira has also complained of increasing fatigue and continued intense pain in her joints. *Id.* at 237-39, 305.

Vieira filed an application for SSDI benefits on September 20, 2021, alleging disability since September 1, 2019. *Id.* at 38, 50, 140. She subsequently requested that her disability onset

date be moved to August 19, 2020, making her 50 years old as of her amended onset date. *Id.* at 16. Her claim was initially denied in January 2023 and upon reconsideration in February 2024. *Id.* at 37, 46, 85.

In January 2023, Dr. Richard Goulding reviewed Vieira's medical record and found that she would be able to perform light exertion with no climbing of ladders, ropes, and scaffolds, and no more than occasional balancing, stooping, kneeling, crouching, crawling, and climbing stairs or ramps. *Id.* at 32-34. In his opinion, Vieira would be able to sit and stand or walk for 6 hours in an 8-hour workday and had limitations in her ability to reach overhead. *Id.* at 33. He noted Vieira's normal gait, good motor strength, and ability to go up and down stairs, while also noting her joint pain, chronic pain, and trouble with overhead lifting. *Id.* at 34. In November 2023, Dr. Elaine Hom also reviewed Vieira's medical record and concurred with Dr. Goulding's findings. *Id.* at 42-44.

In September 2024, the ALJ heard testimony from Vieira and a vocational expert at a remote hearing. *Id.* at 12-28. Following that hearing, the ALJ issued an unfavorable decision, finding that Vieira was not disabled within the meaning of the Social Security Act. *Id.* at 47-64. The ALJ determined that even though Vieira had physical impairments, she had an RFC to perform light work, including work as a production assembler, price marker, hand packager, or routing clerk. *Id.* at 60-64. In so concluding, the ALJ found that Dr. Fisher's October 2021 assessment regarding Vieira's limitations was "not persuasive," and that the January and November 2023 opinions of Dr. Goulding and Dr. Hom were "generally persuasive." *Id.* at 61-62. The ALJ noted Vieira's chronic diffuse pain, tenderness, and treatment by a rheumatologist, but also observed that (1) her range of motion, strength, sensation, and reflexes were intact; (2) she possessed a normal gait and did not require handheld assistive devices, braces, splints, or other medical devices; (3) she had not been referred for physical therapy, required a surgical consultation, or needed

treatment through a pain management clinic; and (4) no evidence existed that she had joint deformity, swelling, warmth, or redness. *Id.* at 61.

Following the Appeals Council's denial of Vieira's request to review the ALJ's decision in August 2025, that ruling became the final decision of the Commissioner. *Id.* at 1-3. In October 2025, Vieira filed this action for judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). ECF 1. The Commissioner moved to affirm that decision. ECF 11. The Court held a hearing and took that motion under advisement. ECF 23.

## STANDARD OF REVIEW

Under the Social Security Act, the Court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's role is to determine whether that "decision is supported by substantial evidence and whether the correct legal standard was used." *Seavey*, 276 F.3d at 9. It must "review questions of law de novo, but defer to the Commissioner's findings of fact, so long as they are supported by substantial evidence." *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000); *see Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019). Substantial evidence exists "'if a reasonable mind, reviewing the evidence on the record as a whole, could accept it as adequate to support [the] conclusion,' even if the record could also justify a different conclusion." *Applebee v. Berryhill*, 744 F. App'x 6 (1st Cir. 2018) (per curiam) (quoting *Rodriguez v. Sec'y Health & Human Servs.*, 647 F.2d 218, 222-23 (1st Cir. 1981)). In applying this standard, the Court must be mindful "that it is the province of the ALJ, not the courts, to find facts, decide issues of credibility, draw inferences from the record, and resolve conflicts of evidence." *Id.* (citing *Irlanda Ortiz v. Sec'y Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). But findings of fact are not entitled

to deference "'when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.'" *Sacilowski*, 959 F.3d at 437 (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)).

## DISCUSSION

Vieira contends that the ALJ improperly discounted Dr. Fisher's October 2021 opinion by not adequately explaining how she considered the supportability or consistency factors for that opinion. Under the governing regulation, an ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(b)(2). "Supportability is the degree to which a provider supports their opinion with relevant, objective medical evidence and explanation." *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023); *see* 20 C.F.R. § 404.1520c(c)(1). And "consistency is the degree to which a provider's opinion is consistent with the evidence of other medical and non-medical sources in the record." *Oakes*, 70 F.4th at 212; *see* 20 C.F.R. § 404.1520c(c)(1)-(2). Consistency also addresses whether an opinion "contains an internal conflict with evidence from the same medical source." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 5854 (Jan. 18, 2017); *see* 20 C.F.R. § 404.1520b(b).

The ALJ adequately explained how she considered both factors. With respect to consistency, the ALJ concluded that Dr. Fisher's opinion regarding Vieira's ability to sit, stand, walk, and use her hands was inconsistent with Vieira's "description of her daily activities," which, in the ALJ's view, "indicates a greater ability with respect to sitting, standing, walking, lifting and carrying." ECF 6, at 62; *see* Social Security Ruling ("SSR") 12-2p, 2012 WL 3104869, *5 (July 25, 2012) (for fibromyalgia, ALJs should consider, among other things, "the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms").

7

Vieira argues that the ALJ improperly "cherry-pick[ed]" information from her daily activities to discredit Dr. Fisher's medical opinion. ECF 9, at 14. But Vieira acknowledges that she reported being able "to care for her two children and family pets," including "bringing the children to and from school daily"; to "care for her personal needs[,] grooming[,] and hygiene"; and "to prepare meals, to drive, to shop and to manage her finances." ECF 6, at 61. While Vieira also reported limitations on those activities and significant time spent watching television, the ALJ was free to credit Vieira's self-reported abilities to complete such daily tasks. *Id.* at 19-20, 174-75, 202-03. It was reasonable "for the ALJ to infer, from what the record showed about [Vieira's] ability to engage in these types of daily activities, that [she] could perform light work." *Coskery v. Berryhill*, 892 F.3d 1, 7 (1st Cir. 2018) (claimant did "household chores, care[d] for a dog, shop[ped] for groceries, and engage[d] in other daily activities"); *see Smith v. Berryhill*, 370 F. Supp. 3d 282, 290 (D. Mass. 2019) (affirming ALJ's conclusion that a physician's opinion that plaintiff's conditions, including fibromyalgia, was disabling "conflicted with Plaintiff's everyday activities"); *Peters v. Colvin*, 133 F. Supp. 3d 273, 284 (D. Mass. 2015) (discounting treating physician's opinion that plaintiff was "severely functionally limited in her daily activities" due to, among other ailments, fibromyalgia because it was "inconsistent with the evidence in the record showing that [she was] able to care for two young children, prepare meals, and drive short distances").

The ALJ also concluded that Dr. Fisher's opinion was inconsistent with "his own and subsequent exam findings." ECF 6, at 62. Although he determined in October 2021 that Vieira's pain level markedly impacted her ability to function physically, his treatment notes indicate that Vieira's reported pain level varied over time. *See id.* at 295-96, 349-50. Further, despite concluding that Vieira had difficulty walking and standing, Dr. Fisher noted in June, August, and November

8

2021 and April 2022 that Vieira's "[g]ait and station [were] normal." *Id.* at 238, 245, 253, 308. He also observed in December 2022 that she was "ok going down stairs or walking normally." *Id.* at 349. And while he opined in October 2021 that Vieira could sit for only 2-3 hours within an 8-hour workday, Vieira self-reported in November 2024 that she had no difficulty sitting. *Id.* at 206, 223. Resolving these types of "conflicts in the evidence is for the [ALJ], not the courts." *Irlanda Ortiz*, 955 F.2d at 769.

The ALJ determined, moreover, that, unlike Dr. Fisher's opinion, the other experts' opinions were "consistent with . . . the physical exam findings, [Vieira's] daily activities, and the relatively conservative treatment modalities that have been employed with respect to her allegedly disabling impairments." ECF 6, at 62.[1] After reviewing Vieira's medical record and impairments, including fibromyalgia, Dr. Goulding concluded in January 2023 that she could sit and stand for 6 hours per workday; her "gait [was] normal"; she could "go down stairs" and "wal[k] normally"; she had "[g]ood motor strength"; and she experienced "[s]ome limitations" in the activities of daily life but could still "[d]rive, rid[e] [and] shop." *Id.* at 33-34. In November 2023, Dr. Hom concurred with that assessment and similarly noted that Vieira "walk[ed] normally" and experienced "pain with going up stairs" but could "go down the stairs." *Id.* at 44. Substantial evidence supports the ALJ's evaluation of the consistency of Dr. Fisher's October 2021 opinion in light of the other medical evidence and the more recent opinions of Drs. Goulding and Hom. *See Richards v. Hewlett-Packard Corp.*, 592 F.3d 232, 241 (1st Cir. 2010) (affirming termination of benefits for plaintiff because "while the evidence may have supported the diagnos[is] of fibromyalgia . . . , every reviewing, board-certified doctor, with the exception of Dr. Hryniewich, found that [he]

---

[1] These doctors were required to "have a good understanding of [Social Security] disability programs and their evidentiary requirements," 20 C.F.R. § 416.919n, and are viewed as "highly qualified and experts in Social Security disability evaluation," *id.* § 404.1513a(b)(1).

could perform a sedentary job for which he was reasonably fit by education, training or experience").

Turning to supportability, the ALJ explained that Dr. Fisher's opinion regarding Vieira's limitations lacked support from the medical evidence, which demonstrated "tenderness but no actual joint swelling or joint abnormalities." ECF 6, at 62. Further, the ALJ explained, Vieira was "neurologically intact" and did not need a "cane or any other hand-held assistive device." *Id.*[2] Dr. Fisher stated that his October 2021 opinion that Vieira suffered from severe limitations was based on his direct observation, examination, and treatment of her since December 2020; her patient report; and his own experience and background. ECF 6, at 226. But his assessment did not cite to any relevant treatment notes, and it amounted to little more than a check-box form lacking further written explanation. *See id.* at 223-26; *Coe v. Colvin*, No. 15-cv-30037-MGM, 2016 WL 3350995, at \*7 (D. Mass. June 15, 2016) (ALJ appropriately discounted physician's opinion where her "treatment records [lacked] any corroboration of the physical limitations she assessed" for the RFC of plaintiff who suffered from fibromyalgia). In contrast, as the ALJ observed, Drs. Goulding and Hom supported their more up-to-date "opinions with citation to specific evidence of record" and "put their opinions as to [Vieira's] capabilities in work-related functional terms." ECF 6, at 61-62.

Vieira argues that the ALJ improperly relied on her physical symptoms showing her normal joints and neurological functioning to discredit Dr. Fisher's opinion. But this argument conflates her fibromyalgia diagnosis with whether she qualifies as disabled pursuant to the Social Security Act. Her reliance on *Johnson v. Astrue* is therefore misplaced. In that case, the First Circuit held that the ALJ erroneously disregarded the opinion of the claimant's treating rheumatologist by

---

[2] As the parties acknowledge, the fact that Vieira does not use a cane is *consistent* with Dr. Fisher's opinion that such use was not medically necessary. ECF 6, at 53, 223. But that fact does not wholly *support* his opinion about her inability to walk or stand for extended periods of time.

"'requiring objective evidence beyond the clinical findings necessary for a *diagnosis* of fibromyalgia under established medical guidelines.'" 597 F.3d at 412 (emphasis added) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2d Cir. 2003)). Here, however, the ALJ accepted Dr. Fisher's diagnosis that Vieira suffered from fibromyalgia, "considered it" in assessing her RFC, and ultimately determined that her associated symptoms did not render her disabled under the Social Security Act. ECF 6, at 58-59.

While that diagnosis "may not lend [itself] to objective clinical findings, the physical limitations imposed by the symptoms of [fibromyalgia] do lend themselves to objective analysis." *Boardman v. Prudential Ins. Co. of Am.*, 337 F.3d 9, 17 n.5 (1st Cir. 2003); *see Ovist v. Unum Life Ins. Co. of Am.*, 14 F.4th 106, 123 (1st Cir. 2021) (assuming plaintiff had fibromyalgia but concluding that insurer reasonably "require[d] that [she] provide objective evidence of her functional limitations"). The ALJ was, accordingly, free to question Dr. Fisher's opinion based on the objective medical evidence of Vieira's symptoms, including her lack of tenderness and normal gait. ECF 6, at 61-62; *see Thorley v. O'Malley*, No. 22-cv-10884-DJC, 2024 WL 1333511, at *8-9 (D. Mass. Mar. 28, 2024) (ALJ properly evaluated supportability of treating physician's opinion regarding plaintiff's fibromyalgia diagnosis given "'normal'" physical examination results (citation omitted)); *Lindsay L. v. Kijakazi*, No. 22-cv-16-JJM, 2022 WL 4724098, at *9 (D.R.I. Oct. 3, 2022) ("ALJ appropriately considered objective evidence that Plaintiff's fibromyalgia pain and other symptoms did not affect her functioning to the extent alleged" where "she routinely was in no apparent distress, had a normal gait and balance, and showed intact strength and sensation in her extremities"), *subsequently aff'd sub nom. Lesieur v. O'Malley*, No. 23-1022, 2024 WL 513702 (1st Cir. Feb. 8, 2024).

Vieira further protests that the ALJ failed to discuss the supportability and consistency factors "separately." ECF 9, at 11. But there is no requirement that those factors be evaluated separately. Nor is the ALJ required to use the terms "consistency" or "supportability" to fulfill her obligation to consider those factors. *See Darling v. Kijakazi*, No. 22-35594, 2023 WL 4103935, at *2 (9th Cir. June 21, 2023) ("An ALJ is not required to incant the 'magic words' of 'supportability' and 'consistency' in his findings." (citation omitted)); *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024) (same). Such requirements would elevate form over substance. Vieira also argues that "the ALJ made a conclusory finding that Dr. Fisher's opinion was not persuasive." ECF 9, at 11. The ALJ's analysis must, however, be viewed "as a whole." *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018). And as explained, substantial evidence supports the ALJ's determination that Dr. Fisher's medical opinion was unpersuasive. Since the ALJ's decision sufficiently allows this Court "to trace the path of [her] reasoning," that decision must be affirmed. 82 Fed. Reg. at 5858.

## CONCLUSION AND ORDER

For the foregoing reasons, the Commissioner's motion to affirm his decision, ECF 11, is GRANTED. The Commissioner's decision is AFFIRMED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
Dated: July 21, 2026                    UNITED STATES DISTRICT JUDGE